UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS E. MARTINEZ REYES,

        Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.
_____

18-CV-0394-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18).

Plaintiff Luis E. Martinez-Reyes ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 13) is denied and defendant's motion (Dkt. No. 16) is granted.

## BACKGROUND

Plaintiff filed an application for DIB on September 2, 2014 alleging disability since April 13, 2013 due to bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), personality disorder, and human immunodeficiency virus ("HIV"). (*See* Tr. 75-76).[2] Plaintiff's disability benefits application was initially denied on November 4, 2014.

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

(Tr. 89-91). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Bryce Baird on June 27, 2017. (Tr. 28-55). ALJ Baird heard testimony from plaintiff, who was represented by counsel, as well as from Lanell Hall, an impartial vocational expert. (*Id.*). On September 27, 2017, ALJ Baird issued a decision that plaintiff was not disabled under the Act. (Tr. 13-24). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 156-57). Plaintiff's request for review of the decision was denied by the Appeals Council on January 29, 2018. (Tr. 1-6). The ALJ's September 27, 2017 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on April 20, 1964, plaintiff was 48 years old on the alleged disability onset date and 53 years old on the date of the hearing. (Tr. 22, 76). Plaintiff is able to communicate in English, has completed four or more years of college and has previously worked as a shipping clerk, order processing clerk, cashier, student coordinator, and auditor. (Tr. 22, 35-40, 84, 186).

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

3

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

4

does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that plaintiff last met the insured status requirements of the Act on June 30, 2016. (Tr. 13, 15). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity from the alleged onset date of April 13, 2013 through June 30, 2016, the date last insured. (Tr. 15). At step two, the ALJ found that plaintiff had the following severe impairments: (1) bipolar disorder; (2) anxiety disorder; (3) PTSD; and (4) personality disorder.[3] (Tr. 15). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15-17). Before proceeding to step four, the ALJ assessed plaintiff's RFC through the date last insured as follows:

> [T]he [plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work involving simple, routine tasks that could be learned after short demonstration or within 30 days. He further is limited to work with no production rate or pace work; work that does not require travel to unfamiliar places; and work where he would not be required to develop work strategies independently or to identify workplace needs. The [plaintiff] could tolerate no more than superficial interaction with the public and occasional interaction with coworkers. He further is subject to work that does not require teamwork, such as on a production line, and work that requires doing the same tasks every day with little variation in location, hours or

---

[3] Also at step two, the ALJ noted that plaintiff's medical records revealed a diagnosis of HIV positive status since 2004. (Tr. 15). However, the record further indicated that plaintiff was receiving effective treatment with medication and demonstrated no symptoms of clinical AIDS. (*Id.*). Further, the record indicated that plaintiff was diagnosed with a seizure disorder. (*Id.*). However, the record reflected that plaintiff can drive and that he does not suffer limitations related to the seizure disorder. (*Id.*).

tasks.  Additionally, the [plaintiff] would be limited to work that can be performed independently of other employees.

(Tr. 17-21).

Proceeding to step four, the ALJ concluded, based upon the testimony of Vocational Expert ("VE") Hall, that plaintiff was unable to perform any past relevant work through the date last insured.  (Tr. 21-22).  Proceeding to step five, and after considering testimony from VE Hall in addition to plaintiff's age, work experience and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as laundry worker, kitchen helper and machine feeder.  (Tr. 22-23).  Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from April 13, 2013, the alleged onset date, through June 30, 2016, the date last insured.  (Tr. 23).

IV.  *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by discounting the opinion of plaintiff's treating physician, Fatai Gbadamosi, M.D.  (*See* Dkt. No. 13-1 (Plaintiff's Memo of Law)).  For the reasons that follow, the Court finds that the ALJ properly applied the treating physician rule in evaluating the opinion of Dr. Gbadamosi.

Plaintiff contends that he is disabled from working because of bipolar disorder, anxiety, and PTSD.[4]  (Tr. 32).  Plaintiff testified that he stopped working because he was experiencing anxiety and panic attacks, and because he had an altercation with a co-worker.  (Tr. 42).  Plaintiff also testified that he experiences periods of depression which cause him to want to remain in bed and avoid interactions with others.  (Tr. 44-45).  On November 11, 2014, Dr. Gbadamosi completed a Mental Impairment Questionnaire on

---

[4] At the hearing, plaintiff represented that he does not allege any physical impairments.  (Tr. 35).

behalf of plaintiff. (Tr. 311-16). The ALJ gave some weight to Dr. Gbadamosi's opinions set forth therein. (Tr. 21). For example, Dr. Gbadamosi opined that plaintiff had some significant functional limitations, such as moderate difficulties in maintaining concentration, persistence or pace. (Tr. 311-16). Consistent with these opinions, the RFC indicates that plaintiff is limited to performing simple, routine tasks that could be learned after a short demonstration or within 30 days, and that he is limited to work with no production rate or pace work. (Tr. 17). However, the ALJ gave no weight to Dr. Gbadamosi's opinion that plaintiff is "unable to meet competitive standards" in the category of ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 21). Plaintiff contends that the ALJ violated the treating physician rule by failing to credit Dr. Gbadamosi's opinion that plaintiff was unable to complete a normal workday and workweek and, as a result, would miss two or three works days a month. (Tr. 311-16). Plaintiff argues that these limitations, if properly credited, would preclude plaintiff from working.

The treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Social Security Regulations require the Commissioner to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32; *quoting* 20 C.F.R. §404.1527(c)(2). Indeed, the reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, 6:15-cv-0643, 2016 WL 3514126, *6

8

(W.D.N.Y. June 28, 2016); *accord Blake v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." 20 C.F.R. §404.1527(c)(2). "When other substantial evidence in the record conflicts with the treating physician's opinion…that opinion will not be deemed controlling…[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord* 20 C.F.R. §404.1527(c)(4).

Here, the ALJ considered the factors outlined in the Social Security Regulations when he afforded no weight to Dr. Gbadamosi's opinion that plaintiff was unable to complete a normal workday or workweek without interruption because of his mental health impairments. To begin, the ALJ considered that Dr. Gbadamosi was a treating physician, but also that Dr. Gbadamosi did not provide specialized mental health treatment. (Tr. 18). Indeed, the ALJ referenced plaintiff's treatment records from Evergreen Health Services as well as the November 11, 2014 Mental Impairment Questionnaire. (Tr. 21, 311). These records reflect that plaintiff saw Dr. Gbadamosi every three to four months for monitoring of his HIV diagnosis, and not specifically for mental health treatment. (*Id.*). In fact, Dr. Gbadamosi stated, in the Mental Impairment Questionnaire, that plaintiff receives "specialty care" for depression and anxiety, and that

9

the "signs and symptoms" portion of the Questionnaire would be rendered "more complete" by the opinion of a mental health provider. (Tr. 312). Further, the ALJ noted that during an appointment at Evergreen Health Services on August 26, 2014, plaintiff was offered counseling with respect to his depression and anxiety. (Tr. 18-19, 230). However, plaintiff refused and indicated that he did not believe counseling was needed. (*Id.*).

The ALJ also explained, in detail, that plaintiff's mental health treatment records did not support Dr. Gbadamosi's opinion that plaintiff could not complete a normal workday or workweek because of his psychological impairments. (Tr. 18-19). Plaintiff received mental health treatment at Lake Shore Behavioral Health ("Lake Shore") from April 18, 2012 through March 10, 2016. (Tr. 288, 370-71). During a counseling session at Lake Shore on April 2, 2014, it was noted that plaintiff had an ongoing diagnosis of depression and anxiety, but that his condition had improved and was fairly stable. (Tr. 18, 297). It was further noted that while plaintiff experienced mild depression periodically due to stressors, he was compliant with treatment, counseling and medication. (*Id.*). The ALJ emphasized that a psychiatric examination performed on that date revealed that plaintiff was mildly depressed and anxious, but that he showed good attention and concentration, good fundamental knowledge and intelligence, and some reasonable insight. (*Id.*). The ALJ also noted that, on April 7, 2015, plaintiff reported to a treatment provider at Lake Shore that his depression was (1) mild to moderate in severity; (2) present on some days more than others; and (3) relieved by counseling and emotional support. (Tr. 19, 354). The ALJ further noted that plaintiff declined to continue antidepressant medication and expressed a desire to see "how he did" without

10

medication.  (*Id.*).  The ALJ indicated that a psychiatric exam performed that day reflected no abnormalities.  (*Id.*).  Plaintiff was oriented, had good attention and concentration, appropriate affect and reasoning, and demonstrated fair insight and judgment.  (*Id.*).  The ALJ further noted that during a counseling session on August 6, 2015, plaintiff stated that his depression and mood swings had improved, and that his PTSD was stable.  (Tr. 19, 358).  Plaintiff also stated that his anxiety was mild to moderate and present some days more than others.  (*Id.*).  Again, his psychiatric exam demonstrated no abnormalities.  (*Id.*).  The ALJ noted that on January 5, 2016, plaintiff reported that his symptoms of depression, anxiety, PTSD and mood swings fluctuated, but that they were mild in severity and manageable.  (Tr. 19, 364).  Plaintiff again stated that he was not interested in taking antidepressant medication.  (*Id.*).  Consistent with the prior examinations, plaintiff's psychiatric exam showed no signs of abnormalities.  (*Id.*).

As thoroughly explained by the ALJ, plaintiff's treatment records reflect that his mental health impairments are mild to moderate in nature, have been stabilized through treatment, and are not incompatible with the ability to perform sustained, unskilled work with little contact with the public.  Thus, contrary to Dr. Gbadamosi's opinion, there is no support in the treatment records that these impairments would preclude plaintiff from completing a normal workday or workweek without interruption or cause plaintiff to miss two or three work days per month.  *See Viteritti v. Colvin*, 14-6760, 2016 U.S. Dist. LEXIS 109358 (E.D.N.Y. Aug. 17, 2016) (ALJ did not err in giving little weight to treating source's opinions that plaintiff had mostly extreme and marked mental limitations because the opinions were inconsistent with plaintiff's treatment records showing stabilized mood and decreased anxiety with treatment); *Fernandez v. Comm'r of Soc. Sec.*, 16 Civ. 4533, 2017

U.S. Dist. LEXIS 141355 (S.D.N.Y. Aug. 30, 2017) ("[A]n ALJ is not required to award controlling weight to a treating physician's opinion that is inconsistent with other treatment records.").

Likewise, the ALJ accurately noted that plaintiff's successful discharge from Lake Shore on March 10, 2016 contradicts Dr. Gbadamosi's opinion that plaintiff was unable to complete a normal workday or workweek and would miss two or three work days a month. (Tr. 19, 21, 370-71). Plaintiff argues that it was error for the ALJ to consider plaintiff's discharge from Lake Shore because a plaintiff's "refusal or inability to obtain treatment for a mental illness is not necessarily probative of the severity of the individual's disability." *Melia v. Colvin*, 1:14-cv-00226, 2015 WL 4041742, *19 (N.D.N.Y. 2015); *accord DeLeon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 934 (2d Cir. 1984). However, the facts here do not indicate that plaintiff either refused or was otherwise unable to receive necessary mental health treatment. Instead, the medical records reflect that plaintiff received treatment for his mental health conditions for years and that his conditions improved and stabilized over time. The medical records further indicate that plaintiff stopped taking antidepressant medication as his condition improved and that plaintiff eventually elected to stop treatment because he felt it was no longer necessary. Indeed, the discharge statement from Lake Shore indicates that plaintiff has "reduced frequency of visits and through the course of treatment has demonstrated improvement in mood, mood management and ability to accept current life situation with the goal/effort of improving life satisfaction." (Tr. 370). It was further noted that through the course of treatment, plaintiff "demonstrated increased motivation to work toward

educational and vocational goals and during this time was seen with reduced frequency." (Tr. 371).

Lastly, the ALJ supported his rejection of Dr. Gbadamosi's opinion as to plaintiff's ability to maintain a regular work schedule by explaining how such a severe limitation was inconsistent with other evidence in the record, including plaintiff's own representation of his condition and capabilities. (Tr. 19-20). The ALJ noted that in October of 2014, plaintiff told a consultative examining physician that he could cook, bathe, dress and drive on a limited basis. (Tr. 19-20, 307-310). Further, plaintiff testified that he grocery shops with his partner, does laundry, and exercises at a gym. (Tr. 19-20, 45-47). Also in 2014, plaintiff reported to a counselor that he was willing to seek employment and educational opportunities and attributed his depressive symptoms to boredom and lack of activity. (Tr. 322). The ALJ noted that during a November 7, 2016 appointment with Evergreen Health Services, plaintiff reported he was planning to return to school to become a massage therapist. (Tr. 20, 515). Indeed, plaintiff's representations that he planned to pursue certain jobs or further his education suggests that he felt capable of maintaining a normal work or school schedule, despite his mental impairments. Plaintiff also reported, at that time, that while he experienced some trouble sleeping, his anxiety was "not that bad." (*Id.*). *See Scritney v. Colvin*, 41 F. Supp. 3d 289, 301-02 (W.D.N.Y. 2014) (ALJ correctly rejected the substantial limitations set forth by treating physician where the treating physician's opinions were inconsistent with the record as a whole, including plaintiff's own testimony); *Harrington v. Colvin*, 14 CV 6044, 2015 U.S. Dist. LEXIS 22357 (W.D.N.Y. Feb. 25, 2015)(ALJ properly discounted treating physician opinion where it assessed limitations that were inconsistent with findings contained in the treatment

13

records and with admissions plaintiff made concerning his activities of daily living). Thus, the Court finds that the ALJ gave ample, specific and good reasons for giving no weight to Dr. Gbadamosi's opinion that plaintiff is unable to meet competitive standards in the category of ability to complete a normal workday and workweek and that, in doing so, the ALJ did not violate the treating physician rule.

Plaintiff also argues that the ALJ erred because the RFC should have included a limitation or restriction as to plaintiff's ability to interact with supervisors or, in the alternative, the ALJ should have explained why such a restriction was not supported by the record. (*See* Dkt. No. 13-1 (Plaintiff's Memo of Law)). Dr. Gbadamosi opined that plaintiff was "seriously limited but not precluded" from: (1) working in coordination with or in close proximity to others; (2) getting along with co-workers or peers; and (3) accepting instructions from and responding appropriately to criticism from supervisors. (Tr. 313). While the RFC indicates that plaintiff is restricted to superficial interaction with the public and occasional interaction with co-workers, it does not include a restriction as to plaintiff's ability to interact with supervisors. (Tr. 17). For the reasons that follow, the Court finds that any failure by the ALJ to either include a restriction regarding plaintiff's ability to interact with supervisors, or to explain why such a restriction was not necessary, was harmless error.

Plaintiff is correct that the ALJ failed to address Dr. Gbadamosi's opinion that plaintiff was seriously limited in his ability to interact with supervisors. However, the Second Circuit has held that "[w]here application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Here, the record

does not reflect that plaintiff was seriously limited in his ability to interact with supervisors. Instead, the record shows that plaintiff can perform sustained, unskilled work with limited interaction with the public and some interaction with supervisors. As explained in detail above, plaintiff's depression, anxiety and PTSD stabilized between April of 2013 and June of 2016. Indeed, the medical records reflect that plaintiff responded well to treatment, discontinued his antidepressants, and reported symptoms that were, at most, mild to moderate in severity. His psychiatric examinations were consistently normal. Moreover, plaintiff represented, on more than one occasion, that he hoped to return to school or work, which would presumably include interacting with bosses, supervisors or other authority figures. Likewise, his discharge report from Lake Shore reflected that plaintiff had increased motivation to work toward educational and vocational goals. On October 14, 2014, a state-agency psychological consultant reviewed the record and found that plaintiff could understand and follow work directions in a work setting with low public contact, maintain attention for work tasks, relate adequately to a work supervisor and use judgment to make work-related decisions. (Tr. 80). In addition, health care providers routinely observed plaintiff to be cooperative, well-behaved, friendly and pleasant. (Tr. 80, 229, 234, 239, 243, 247, 252-53, 297, 299, 302-03, 354, 356, 358, 362, 364, 390, 395, 403, 407-08, 412, 420-21, 425, 432, 439, 444-45, 458, 511, 517, 530). Finally, while plaintiff testified that he left his last job after an altercation with a co-worker, he did not testify that he had difficulties interacting with supervisors. In his Disability Report, plaintiff indicated that he has never lost a job because of problems getting along with people. (Tr. 199). For these reasons, the Court finds that there is not substantial evidence in the record to support a finding that plaintiff was substantially limited in interacting with

15

supervisors. Thus, the ALJ's failure to include such a restriction or to specifically reject Dr. Gbadamosi's opinion was harmless error and does not require remand. *See Walzer v. Chater*, 93-CV-6240, 1995 U.S. Dist. LEXIS 21968 (S.D.N.Y. Sept. 26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome).

Moreover, any failure by the ALJ to account for Dr. Gbadamosi's opinion regarding plaintiff's ability to interact with supervisors was harmless because the jobs cited by the VE involved only occasional interaction with supervisors. During the hearing, the ALJ presented the VE with a hypothetical of an individual who was restricted to, *inter alia*, "no more than superficial interaction with the public and up to occasional interaction with co-workers." (Tr. 51). The VE opined that an individual with these restrictions could perform the jobs of laundry worker, kitchen helper and machine feeder. (Tr. 22-23, 51). Even though the ALJ did not specifically include a supervisor restriction in the hypothetical presented to the VE, case law reflects that each of these jobs requires only occasional interaction with supervisors. *See Frazier v. Commissioner of Social Security*, 16 Civ. 4320, 2017 WL 1422465 (S.D.N.Y. April 21, 2017) (VE testified that an individual who could only perform "jobs involving simple, routine, repetitive style tasks, and involving only occasional contact with supervisors, coworkers and the public" could perform the duties of a kitchen helper); *Piatt v. Colvin*, 80 F. Supp. 3d 480 (W.D.N.Y. 2015) (noting that the VE testified that someone limited to "occasional contact with supervisors, co-workers and the public" could perform the occupation of machine feeder); *Millidge v. Colvin*, 12-CV-0288, 2014 WL 4057356 (W.D.N.Y. Aug. 14, 2014) (VE testified that an individual who was limited to "jobs involving simple instructions, not dealing with the public, and only

16

occasionally dealing with supervisors and coworkers" could perform the job of laundry worker). In sum, because the record does not support a finding that plaintiff was seriously limited in his ability to interact with supervisors and because the jobs cited by the VE involve only occasional interaction with supervisors, the ALJ's failure to address Dr. Gbadamosi's opinion as to plaintiff's ability to interact with supervisors is not grounds for remand.

Finally, plaintiff argues that the ALJ erred by failing to consider a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" completed on March 19, 2013. (*See* Dkt. No. 13-1 (Plaintiff's Memo of Law)). It appears that the Assessment was completed by Kathleen Crissey, MS, a licensed mental health counselor from Lake Shore. (Tr. 480-82). The Assessment notes that plaintiff's treating psychiatrist at Lake Shore is Hong Rak Choe, M.D. The Assessment indicates that plaintiff is moderately limited in maintaining attention and concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior, and functioning in a work setting at a consistent pace. (Tr. 481).

The Court finds that the ALJ did not err by failing to credit the opinions set forth in the March 19, 2013 Assessment. The Assessment predates the relevant time period here, which spans from the alleged onset date of April 13, 2013 through June 30, 2016, the date last insured. *See Cataneo v. Astrue*, 11-CV-2671, 2013 U.S. Dist. LEXIS 36653 (E.D.N.Y. Mar. 17, 2013) (defining the relevant period as between plaintiff's alleged disability onset date and the last date plaintiff qualified for DIB). Thus, the ALJ was under no obligation to consider the opinion. *See Williams v. Colvin*, 98 F. Supp. 3d 614, 631

(W.D.N.Y. 2015) (finding that the ALJ was not required to evaluate the opinions of two doctors whose opinions predated the relevant time period); *Krach v. Colvin*, 13-CV-1089, 2014 U.S. Dist. LEXIS 146922, *23 (N.D.N.Y. Aug. 26, 2014) ("the ALJ is under no obligation to consider evidence from a time before the relevant period."); *Sabrina L. v. Berryhill*, 1:17-cv-00542, 2018 U.S. Dist. LEXIS 210423 (W.D.N.Y. Dec. 12, 2018) (internal quotation and citations omitted) ("While an ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date…an ALJ is not required to evaluate opinions that pre-date" the relevant time period). Moreover, the Assessment from March of 2013 is not relevant here. As explained in detail above, plaintiff's mental health impairments improved significantly between the alleged onset date in April 2013 through March of 2016, when he was discharged from Lake Shore. *Compare Canestrare v. Comm'r of Soc. Sec.*, 5:16-cv-0920, 2017 U.S. Dist. LEXIS 113747 (N.D.N.Y. July 21, 2017) (a medical opinion rendered before the relevant time period may be relevant where the findings show an ongoing, chronic impairment that does not improve or fluctuate).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: July 25, 2019
 Buffalo, New York

/s/ *Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge